EPSTEIN BECKER & GREEN, P.C.
Alexander C.B. Barnard
Scott J. Splittgerber
875 Third Avenue
New York, New York
(212) 351-4500
ABarnard@ebglaw.com
SSplittgerber@ebglaw.com

*Attorneys for Petitioners Banco Credit Suisse (Mexico), S.A.*
*and Casa de Bolsa Credit Suisse (Mexico), S.A. de C.V.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------- X

| | |
|---|---|
| BANCO CREDIT SUISSE (MEXICO), S.A.<br>and CASA DE BOLSA CREDIT SUISSE<br>(MEXICO), S.A. DE C.V.,<br><br>     Petitioners,<br><br>  -against-<br><br>RAFAEL HELGUERO RUIZ,<br><br>     Respondent. | ____ Civ. _____ |

------------------------------------------------------- X

<u>**PETITION TO RECOGNIZE, CONFIRM AND ENFORCE ARBITRATION AWARD**</u>
<u>**AND FOR ENTRY OF JUDGMENT**</u>

Petitioners Banco Credit Suisse (Mexico), S.A. ("Banco CS"), and Casa de Bolsa Credit Suisse (Mexico) S.A. de C.V. ("Casa de Bolsa") (collectively "Petitioners"), by and through their attorneys Epstein Becker & Green, P.C., petition the Court pursuant to the Inter-American Convention on International Commercial Arbitration ("Inter-American Convention"), 1438 U.N.T.S. 245, and the Convention of the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), 21 U.S.T. 2517, 330 U.N.T.S. 38 (collectively the "Conventions"), and their implementing legislation at Chapters Two and Three of the Federal Arbitration Act, 9 U.S.C. §§ 201 *et seq.*; §§ 301 *et seq.* ("FAA"), for an order confirming and entering judgment on

the arbitral tribunal's final award in Petitioners' favor and against Rafael Helguero Ruiz ("Respondent"), which the ICC Secretariat served on the Parties via email on March 31, 2025 (the "Award"),[1] and respectfully allege as follows:

## NATURE OF THIS PROCEEDING

1.     Petitioners commence this proceeding to recognize, confirm, and enforce the Award dated March 28, 2025, because the Parties contractually agreed to arbitrate in the forum of the International Court of Arbitration of the International Chamber of Commerce ("ICC") in an arbitration seated in New York, New York, United States and abide by the sole arbitrator's Orders and Award, and because the Award issued is final and enforceable, as none of the extremely narrow grounds to refuse confirmation of the Award under the Conventions or federal law, to the extent applicable, exist here.

## THE PARTIES

2.     Petitioner Banco CS is a bank and financial services firm offering private banking, advisory asset management, and other services and a corporation organized under the laws of Mexico, with its principal place of business in Mexico City, Mexico. As of May 31, 2024, Banco CS is a direct subsidiary of UBS AG, a corporation limited by shares incorporated under the laws of Switzerland, with its dual, principal places of business in Basel and Zurich, Switzerland.

3.     Petitioner Casa de Bolsa is a registered broker dealer, and a corporation organized under the laws of Mexico, with its principal place of business in Mexico City, Mexico. As of May 31, 2024, Casa de Bolsa is a direct subsidiary of UBS AG, a corporation limited by shares incorporated under the laws of Switzerland, with its dual, principal places of business in Basel and

---

[1] A copy of the Award, which has been certified as true and authentic by the ICC International Court of Arbitration, located in Paris, France, is attached to the accompanying Declaration of Scott J. Splittgerber ("Splittgerber Decl.") as **Exhibit A**.

Zurich, Switzerland.

4.     Respondent Helguero is a Mexican citizen residing in Mexico and was an employee of Petitioners from approximately June 20, 2012, until January 31, 2023.

## JURISDICTION AND VENUE

5.     The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 9 U.S.C. § 302 (incorporating 9 U.S.C. § 203), which provide that United States District Courts have original jurisdiction over proceedings falling under the Conventions.

6.     This proceeding falls under the Conventions because it relates to an "arbitral award arising out of a legal relationship" considered as "commercial" and "not entirely between citizens of the United States," 9 U.S.C. § 302 (incorporating 9 U.S.C. § 202), and because both the United States and Mexico are signatories to the Conventions, *see Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración Y Producción*, 832 F.3d 92, 105 (2d Cir. 2016) (explaining that the same standards apply to the Inter-American and the New York Conventions); *see also, e.g., Sanluis Devs., L.L.C. v. CCP Sanluis, L.L.C.*, 498 F. Supp. 2d 699, 702 (S.D.N.Y. 2007) (noting "[t]he [Inter-American Convention] applies when an arbitration arises from a commercial relationship between citizens of signatory nations" and that the United States and Mexico are both signatories to that Convention); *Credit Suisse First Bos., LLC. v. Padilla*, 326 F. Supp. 2d 508, 511 & n.2 (S.D.N.Y. 2004) ("Both the United States and Mexico are signatories to the [New York] Convention.").

7.     The arbitral award is non-domestic because the parties are citizens of Mexico or are incorporated and have their principal place of business outside the United States. *See, e.g., CBF Industria de Gusa S/A v. MXCI Holdings, Inc.*, 850 F.3d 58, 71 (2d Cir. 2017); 9 U.S.C. § 202.

8.     The Court has personal jurisdiction over Respondent because, among other reasons,

the arbitration agreement required that Respondent submit to arbitration under the Rules of the ICC before an arbitration tribunal located in New York, New York, and because Respondent voluntarily acknowledged and submitted to the authority of the ICC in New York, New York by participating in the Arbitration. *See Victory Transp. Inc. v. Comisaria General*, 336 F.2d 354, 363 (2d Cir. 1964) ("By agreeing to arbitrate in New York, where the United States Arbitration Act makes such agreements specifically enforceable, the [Respondent] must be deemed to have consented to the jurisdiction of the court that could compel the arbitration proceeding in New York. To hold otherwise would be to render the arbitration clause a nullity."); *see also, e.g., Everything Yogurt Brands, LLC v. Bianco*, 23-cv-01161 (LJL), 2024 WL 3497757, at *3 (S.D.N.Y. July 22, 2024) (same).

9.      Venue in this District is proper under 9 U.S.C. § 302 (incorporating 9 U.S.C. § 204), because the arbitration hearing took place in New York, New York and the Parties' agreement designated New York, New York as the place of arbitration.

10.     The Court has power to grant the relief requested pursuant to 9 U.S.C. § 302 (incorporating 9 U.S.C. § 207); *see also* Inter-American Convention, Art. IV; New York Convention, Art. IV.

## BACKGROUND

### A.    The Credit Suisse Group AG Master Share Plan

11.     The dispute between the Parties arose under the Credit Suisse Group AG Master Share Plan ("MSP") and its International Supplement, which govern various securities-based, incentive Awards that were granted to Respondent during his employment with Petitioners

(collectively the "Plan").[2]

12.    Section 15(j) of the MSP contains an exclusive dispute resolution clause that states in pertinent part:

"Any dispute between the Group (including, without limitation, each applicable Employer) and a Participant, including without limitation, any dispute under the Plan or an Award Certificate shall be finally settled … under the Rules of the Arbitration of International Chamber of Commerce...."

13.    Section 15(i) of the MSP contains a New York choice of law clause governing the interpretation and application of the Plan documents. It states in pertinent part:

"To provide for consistent application of the Plan and all Award Certificates … the Plan shall in all cases be governed by, and construed in accordance with, the laws of the State of New York, United States applicable to contracts executed and to be performed in that state without giving effect to principles of conflicts of laws…."

14.    Respondent confirmed his understanding of the MSP and the terms of the Plan annually and accepted all of the Awards granted thereunder during his employment without any objections or reservations.

**B.**    **Respondent's Termination and Attempts to Circumvent the Arbitration Agreement**

15.    On January 24, 2023, the Parties executed a separation agreement, wherein Respondent's employment with Banco Credit Suisse (Mexico), S.A., was terminated as of January 31, 2023. As an express condition of that agreement, and for purposes of permitting Respondent's continued participation in the Plan after his termination, the Parties agreed that the terms of the MSP and the conditions of the Awards granted under the Plan, which were identified in an Annex to the separation agreement, remained in force.

16.    By summonses dated June 29, 2023, Respondent filed an action against Petitioners in the Mexican Federal Labor Conciliation and Registration Center in Mexico City, seeking the

---

[2] A true and correct copies of the Credit Suisse Group AG Master Share Plan ("MSP") and its International Supplement are attached to the accompanying Splittgerber Decl. as, respectively, **Exhibits B** and **C**.

"payment of benefits" related to Awards issued under the Plan and that are subject to the MSP's dispute resolution provisions.

17.      That action violated the dispute resolution provision of the MSP, which was expressly integrated into the Separation Agreement.

## C.      **The Arbitration**

18.      On August 4, 2023, Petitioners commenced arbitration against Respondent, by filing a request for arbitration in the ICC in New York, New York, United States pursuant to the Parties' arbitration agreement, seeking declaratory and other relief, and reserving their rights to seek additional interim and injunctive relief.

19.      On August 21, 2023, the Secretariat of the ICC notified Petitioners by the ICC's Case Connect electronic filing platform that it had completed service of the request for arbitration and related papers on Respondent via email on August 10, 2023.

20.      On August 28, 2023, Respondent requested that the ICC grant him a thirty-day extension of time in which to respond to Petitioners' request for arbitration and identified his legal counsel for purposes of his representation, registration with Case Connect and for electronic service of all related correspondence and pleadings. The ICC granted Respondent until October 11, 2023, to submit his answer to the request for arbitration.

21.      On October 11, 2023, Respondent, through his attorneys, electronically filed his answer to the request for arbitration.

22.      On November 30, 2023, Respondent consented to arbitration in the ICC pursuant to the Expedited Procedure Provisions of the ICC Rules for Arbitration in effect as of 2021 ("ICC Rules"). Respondent confirmed his consent to those procedures in a subsequent filing on December 6, 2023.

23.    On December 21, 2023, the ICC Secretariat ruled that the expedited procedures of the ICC Rules would apply in the arbitration, and that New York, New York was the place of the arbitration.

24.    On January 17, 2024, Petitioners filed a request for interim relief, based on notices their Mexican counsel received, dated January 2, 2024, informing them of Respondent's initiation of an action in the Mexican Federal Labor Court on or about December 8, 2023, in contravention of the Parties' arbitration agreement.

25.    On January 25, 2024, the ICC Court appointed Benjamin I. Malek, a German national based in New York, New York, U.S.A., as the sole arbitrator.

26.    A case management conference was held on February 8, 2024, and the sole arbitrator's Procedural Order No. 1 set out the agreed upon schedule and memorialized the Parties' agreement that all communications and any submissions would be transmitted and accepted electronically via e-mail or secure file sharing platform.

27.    On July 18, 2024, the ICC Court appointed Matthew E. Draper, based in New York, New York, U.S.A., as the sole arbitrator, replacing the prior arbitrator.

28.    On August 29, 2024, the Parties presented their respective cases in an evidentiary hearing before the sole arbitrator.

29.    On September 24, 2024, the Parties submitted their respective applications regarding the award of costs and fees in the arbitration.

**D.    <u>The Award</u>**

30.    On March 28, 2025, the sole arbitrator signed the final Award. The Award (a) declared that the subject matter of the dispute between the Parties is subject to the exclusive arbitration clause in the Credit Suisse Group AG Master Share Plan, (b) found that Respondent

breached the arbitration agreement by filing claims covered by the MSP in the Mexican national courts rather than in international arbitration, (c) ordered Respondent to withdraw or abandon his claims in the ongoing action before the Federal Labor Court in Mexico City, Mexico, (d) ordered that Respondent submit any claims asserted in the Mexican federal labor courts that he wished to continue to international arbitration, in accordance with the arbitration provision of the MSP, (e) ordered that the Parties shall bear their own costs and attorneys' fees, and (f) ordered that the Parties equally pay the fees and expenses of the arbitrators.[3]

31.     The arbitral Award summarizes the arbitrator's primary findings as follows:

> Pursuant to the laws applicable to this New York-seated arbitration, therefore, the Tribunal finds that the broad Arbitration Agreement in the MSP governs Respondent's claims in in the Mexican Labor Court. As a consequence, the Tribunal finds that it has exclusive jurisdiction pursuant the MSP's Arbitration Agreement to finally decide the claims brought by Respondent in the Mexican Labor Court. The Tribunal further finds that Respondent's submission and maintenance of those claims before the Mexican Labor Court are violations of the MSP's Arbitration Agreement. Respondent, therefore, must withdraw his claims from the Mexican Labor Court and, if he wishes to pursue them, submit them to be determined by arbitration pursuant to the MSP's Arbitration Agreement.

Award ¶ 163.[4]

**E.     The Award is Ripe for Enforcement**

32.     Article 35(6) of the ICC Arbitration Rules, under which the parties agreed to arbitrate, provides:

> Every award shall be binding on the parties. By submitting the dispute to arbitration under the Rules, the parties undertake to carry out any award without delay and shall be deemed to have waived their right to any form of recourse insofar as such waiver can validly be made.

33.     Section 15(j) of the MSP further states, in relevant part:

The award rendered by the arbitrator(s) shall be final, valid and binding on both the

---

[3] *See* Exhibit A (Award).

[4] *See id*.

Participant and the Group. Judgment upon the award may be entered in any court having jurisdiction thereover and neither such Participant or the Group may oppose such entry.[5]

## COUNT ONE
### (Confirmation of Arbitration Award Under the Inter-American and New York Conventions)

34.    Petitioners repeat and reallege paragraphs 1 through 33 hereof, as if fully set forth within.

35.    The Award is final.

36.    The arbitrator's award is amply supported by the record.

37.    The Award has not been set aside or suspended by a competent authority of the country in which, or under the law of which, the Award was made.

38.    Pursuant to 9 U.S.C. § 302 (incorporating 9 U.S.C. § 207), Petitioner has brought this action within three years after the Award was made on March 31, 2025.

## REQUESTED RELIEF

WHEREFORE, Petitioners respectfully request this Court to issue an Order:

A.    Recognizing, confirming and enforcing the Award rendered against Respondent pursuant to the Conventions and the FAA;

B.    Directing that judgment be entered thereon in the amount of **$7,117.50** to reimburse Claimants for one half of the arbitrator fees and expenses fixed by the ICC for the advance costs paid Claimants,[6] plus pre-judgment and post-judgment interest;

C.    Entering a permanent injunction enjoining Respondent from pursuing his current

---

[5] *See* Exhibit B (MSP).

[6] A true and correct copy of the ICC letter to the Parties fixing the fees and costs of the arbitration is attached to the accompanying Splittgerber Decl. as **Exhibit D** (ICC Financial Table Letter to the Parties, dated March 31, 2025 (setting the arbitrator's fees at $12,000 and $2,000, and their expenses at $235)). *See also* Exhibit A (Award ¶ 172(g) ("The compensation and expenses of the arbitrators shall be borne equally by the Parties.")).

claims in Mexico, or any other future claims, that are subject to mandatory arbitration under the MSP in any forum other than in international arbitration in accordance with the MSP's arbitration provision;

D.    Retaining jurisdiction to enforce satisfaction of the judgment as may be necessary; and

E.    Awarding Petitioners all such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       April 11, 2025

EPSTEIN BECKER & GREEN, P.C.

By: */s/ Scott J. Splittgerber*
    Alexander C.B. Barnard
    Scott J. Splittgerber

    875 Third Avenue
    New York, New York 10022
    Telephone:  212.351.4500
    Facsimile:  212.878.8600
    ABarnard@ebglaw.com
    SSplittgerber@ebglaw.com

    *Attorneys for Petitioners Banco Credit Suisse (Mexico), S.A. and Casa de Bolsa Credit Suisse (Mexico), S.A. de C.V.*